IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| DENISE SCOTT,<br><br>     Plaintiff,<br><br>vs.<br><br>PORTFOLIO RECOVERY ASSOCIATES, LLC,<br><br>     Defendant. | **No. 3:14-cv-00093 – JEG**<br><br>**O R D E R** |

This matter comes before the Court on a Motion for Summary Judgment filed by Defendant Portfolio Recovery Associates, LLC (Portfolio), which Plaintiff Denise Scott (Plaintiff) resists, and a Motion for Partial Summary Judgment on the Issue of Liability filed by Plaintiff, which Portfolio resists. The parties have not requested a hearing, and the Court finds a hearing is unnecessary. The Motions are fully submitted and ready for consideration.

## I.  BACKGROUND

The following relevant facts are either undisputed or viewed in the light most favorable to the non-moving party.[1]

Portfolio is a debt collector. Plaintiff is a senior technical design manager employed by Wal-Mart Stores, Inc. (Wal-Mart), living in Rogers, Arkansas. In early 2005, Portfolio was assigned a defaulted debt owed to Ford Motor Credit by a person named Denise *A.* Scott (the Debtor). Plaintiff's name is Denise *S.* Scott. Portfolio was unsuccessful recovering the Ford Motor Credit debt owed by the Debtor. As a general practice, when Portfolio takes legal action to collect debts, it hires outside legal counsel admitted in the jurisdiction where the legal action takes place. In April 2009, Portfolio retained attorney Kevin Abbott (Abbott) to collect the Ford Motor Credit debt. Portfolio transferred to Abbott the entire Ford Motor Credit account, including the information about the account Portfolio possessed at the time. Thereafter, Portfolio was not actively involved in collecting the debt. In May 2009, Portfolio received additional

---

[1] See <u>Torgerson v. City of Rochester</u>, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

documentation regarding the debt, which included the Debtor's Social Security number.  In June 2009, Abbott filed an action in Iowa District Court for Johnson County, <u>Portfolio Recovery Assoc., LLC, EIN #54-1794735 v. Mike A. Scott and Denise A. Scott (Portfolio v. Mike A. and Denise A. Scott)</u>, Case No. LACV 070826, against the Debtor and her husband, Mike A. Scott, alleging that the two were in default of the Ford Motor Credit debt.  Portfolio obtained a default judgment against the Debtor and Mike A. Scott in July 2009 for $7,862.39.  Plaintiff has never owed money to Portfolio or Ford Motor Credit.  Portfolio has not sued Plaintiff and has no judgment against her.

Abbott sought to garnish the Debtor's wages too execute on Portfolio's default judgment. In order to do so, Abbott needed the Debtor's credit report, Social Security number, and place of employment.  According to the declaration of Jennifer R. Cullen (Cullen), Portfolio's Assistant Vice President of Legal Recovery, Abbott told Portfolio that he "ran Denise Scott's credit report on September 22, 2009 and added a Social Security number to his file based on the credit report."  Cullen Decl. ¶ 11; Def's App. 11 , ECF No. 7-3.  In contrast, Abbott states in his own declaration that he "utilized a service called 'Accurint,' which is offered by LexisNexis, to obtain Denise Scott's Social Security number based on the address that was in the account records."  Abbott Decl. ¶ 4, Def.'s App. 13-14, ECF No. 7-3.  Abbott avows that Accurint "is promoted as being utilized by numerous entities, including government agencies, to obtain con-sumer data" and that he "believed this service to be reliable and . . . relied upon it."  <u>Id.</u>  Abbott declares that he then "confirmed through a service called 'The WorkNumber,' which is a leading employment and income verification service, that Denise Scott was employed at Wal-Mart."  <u>Id.</u> Significantly, neither Cullen's nor Abbott's declaration provides a middle initial or otherwise distinguishes the "Denise Scott" for whom Abbott allegedly received information.  Furthermore, neither Cullen nor Abbott identifies the relevant information Abbott already possessed to per-form this fact-gathering.  Cullen attests that Portfolio did not direct Abbott to run the credit

report, and that until August 11, 2014, after Plaintiff initiated this action, Portfolio was unaware of Abbott's efforts to gather information about the Debtor.

The state court docket sheet for <u>Portfolio v. Mike A. and Denise A. Scott</u>, Case No. LACV 070826, shows that on November 9, 2009, an execution of judgment was filed with the Polk County Sheriff.  Docket - <u>Portfolio v. Mike A. and Denise A. Scott</u>, Pl.'s Ex. 3, ECF No. 8-2. The "comments" for the docket entry on November 30, 2009, show an "Answer of the Garnishee" was filed, and the comments indicate that Denise Scott was not employed at Wal-Mart. <u>Id.</u>  A return of service was filed on March 29, 2010, indicating that the execution of judgment was returned unsatisfied.  <u>Id.</u>

On January 10, 2014, Abbott filed a notice of garnishment requesting that the Polk County Sheriff garnish Plaintiff's wages at Wal-Mart.[2]  The Sheriff served a notice of garnishment on Wal-Mart, and on February 5, 2014, Wal-Mart served answers to garnishment interrogatories.[3] On February 14, 2014, Plaintiff called Abbott and told him she was not the Debtor.  Nonetheless, on March 10, 2014, the Polk County Sheriff garnished $916.07 of Plaintiff's wages.  In response to Plaintiff's call, Abbott faxed a release of garnishment to the Polk County Sheriff's Office, requesting that the garnished funds be returned to "the defendant."  However, the defendant in <u>Portfolio v. Mike A. and Denise A. Scott</u>, Case No. LACV070826, was the Debtor, not Plaintiff, whose wages were erroneously garnished.  On February 17, 2014, Plaintiff called Abbott again and asked him to fax a copy of the release of garnishment to Wal-Mart, which Abbott did that

---

[2] In his declaration, Abbott avers he filed the praecipe on January 21, 2014; however, the docket in <u>Portfolio v. Mike A. and Denise A. Scott</u> indicates the praecipe was filed on January 10, 2014.

[3] The interrogatories indicate Wal-Mart mailed Plaintiff a copy of the Notice of Garnishment.

day.[4]  Pointing solely to Cullen's affidavit, Portfolio asserts it did not exercise control over Abbott, was not involved in obtaining Plaintiff's Social Security number, did not direct Abbott to serve a garnishment on Wal-Mart regarding Plaintiff, and did not know of the garnishment until Plaintiff initiated this action.

At the inception of this litigation, Plaintiff's lawyer, Raymond Johnson (Johnson), told Portfolio's lawyer, Joshua Dickinson (Dickinson), that the garnished funds had not been returned to Plaintiff.  Sometime after July 28, 2014, Dickinson's law firm investigated whether the funds had been returned to Plaintiff and was informed that Wal-Mart had sent the funds to the Sheriff, who then sent the funds to the Johnson County Clerk of Court.  Dickinson contacted Johnson, informed him that he believed the funds were held by the Johnson County Clerk of Court, and offered to help Plaintiff retrieve the funds.

On September 5, 2014, Abbott filed an application with the Johnson County Clerk of Court to condemn funds.  However, on the application, as with the release of garnishment Abbott sent to the Polk County Sheriff in March 2014, Abbott indicated that the funds should be condemned in favor of Denise A. Scott, the defendant in Portfolio v. Mike A. and Denise A. Scott, Case No. LACV070826.  Also on September 5, 2014, the Johnson County District Court ordered the Clerk of Court to pay all funds held directly to "Denise Scott" and to mail the funds to Plaintiff's address previously provided by Johnson.  On September 8, 2014, Dickinson asked Johnson to notify him if Plaintiff did not receive the missing funds.  In January and again in March 2015, Dickinson asked Johnson whether he had Plaintiff's correct address.  On March 11, 2015, Johnson told Dickinson that Plaintiff had not received the funds, and on March 25, 2015, Johnson gave Dickinson Plaintiff's updated address.  Plaintiff has nonetheless never received the funds.  Both Abbott and Portfolio assert that they did not obtain any funds from the garnishment.

---

[4] The record indicates Wal-Mart delivered the money to the Johnson County District Court.

Plaintiff filed an action against Portfolio in the Iowa District Court for Johnson County on June 19, 2014, alleging violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 et seq., and Iowa Debt Collection Practices Act (IDCPA), Iowa Code § 537.7103.  On August 7, 2014, Portfolio timely removed the case pursuant to 28 U.S.C. § 1446.  On July 1, 2015, Portfolio filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 asking the Court to dismiss Plaintiff's Complaint in its entirety.  The same day, Plaintiff also filed a Motion for Partial Summary Judgment on the issue of Portfolio's liability for violations of the FDCPA and IDCPA.

## II.   DISCUSSION

### A.   Jurisdiction

This Court has original jurisdiction over Plaintiff's FDCPA claims pursuant to 28 U.S.C. § 1331 ("[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"), and has supplemental jurisdiction over Plaintiff's IDCPA claims to 28 U.S.C. § 1367(a) ("[except as otherwise provided,] in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy").

### B.   Standard for Motions for Summary Judgment

"Summary judgment is appropriate when no genuine issue of material fact remains and the movant is entitled to judgment as a matter of law . . . .  [I]f the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Walnut Grove Partners, L.P. v. Am. Fam. Mut. Ins. Co., 479 F.3d 949, 951-52 (8th Cir. 2007) (quoting Rifkin v. McDonnell Douglas Corp., 78 F.3d 1277, 1280 (8th Cir. 1996)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  "The moving party bears the burden of showing that the material facts in the case are undisputed."  Pace v. Portfolio Recovery Assoc., LLC, 872

5

F. Supp. 2d 861, 863 (W.D. Mo. 2012) (citing Chomilo v. Shapiro, Nordmeyer & Zielke, LLP, 2007 WL 2695795, at *2 (D. Minn.)), aff'd, 512 F. App'x 643, 645 (8th Cir. 2013) (unpublished per curiam).  A fact is "material" if it might affect the outcome of the suit, and a dispute is "genuine" if the evidence could lead a reasonable jury to return a verdict for either party. Anderson, 477 U.S. at 247.  "Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allega-tions, but must instead set forth specific facts sufficient to raise a genuine issue for trial."  Barber v. C1 Truck Driver Training, LLC, 656 F.3d 782, 791 (8th Cir. 2011) (quoting Wingate v. Gage Cty. Sch. Dist., No. 34, 528 F.3d 1074, 1078 (8th Cir. 2008)).  The nonmoving party need not produce evidence in a form that would be admissible at trial to avoid summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  When considering a motion for summary judgment, a court must view the facts and the inferences to be drawn from them in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)).  "[I]f the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then sum-mary judgment should not be granted."  DePugh v. Smith, 880 F. Supp. 651, 656 (N.D. Iowa 1995) (quoting Anderson, 477 U.S. at 248).  "The Court does not weigh the evidence, nor does it make credibility determinations.  The Court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material."  Phelps v. Powers, 63 F. Supp. 3d 943, 948 (S.D. Iowa 2014) (citing Anderson, 477 U.S. at 252).

### C. Portfolio's Motion for Summary Judgment

#### 1. FDCPA

"The Fair Debt Collection Practices Act prohibits 'debt collector[s]' from making false or misleading representations and from engaging in various abusive and unfair practices."  Heintz v. Jenkins, 514 U.S. 291, 292 (1995) (alteration in original) (quoting § 1692d).  "The purpose of

6

the FDCPA is to eliminate abusive debt collection practices by debt collectors, . . . and debt collectors are liable for failure to comply with any provision of the Act." Dunham v. Portfolio Recovery Assoc., LLC, 663 F.3d 997, 1000 (8th Cir. 2011) (alteration in original) (quoting Richmond v. Higgins, 435 F.3d 825, 828 (8th Cir. 2006)).  "A violation of the FDCPA is reviewed utilizing the unsophisticated-consumer standard which is 'designed to protect consumers of below average sophistication or intelligence without having the standard tied to the very last rung on the sophistication ladder.'"  Strand v. Diversified Collection Serv., Inc., 380 F.3d 316, 317 (8th Cir. 2004) (quoting Duffy v. Landberg, 215 F.3d 871, 874 (8th Cir. 2000)). The FDCPA is a strict liability statute.  See Picht v. John R. Hawks, Ltd., 236 F.3d 446, 451 (8th Cir. 2001) (discussing the "strict liability imposed upon debt collectors by the FDCPA"); see also Clark v. Capital Credit & Collection Servs., Inc., 460 F.3d 1162, 1176 (9th Cir. 2006) (holding that violations of FDCPA need not be knowing or intentional); Ross v. Vakulskas Law Firm, PC, No. 10-CV-4100-DEO, 2012 WL 4092419, at *6 (N.D. Iowa Sept. 17, 2012) (citing Picht, 236 F.3d at 446); Wiener v. Bloomfield, 901 F. Supp. 771, 777 (S.D.N.Y. 1995) (noting that "[t]he broad remedial purpose of the [FDCPA] is not concerned with intent of debt collector;" rather, "[i]ts concern is with the likely effect of various collection practices on the mind of the least sophisticated consumer").

As a threshold matter, to prevail on a claim for violation of the FDCPA, a plaintiff must prove that she is a "consumer" and that a "debt collector" violated a provision of the statute while attempting to collect a "debt."  See Mayhall v. Berman & Rabin, P.A., No. 4:13CV0175 AGF, 2014 WL 340215, at *4 (E.D. Mo. Jan. 30, 2014).  Consumer is defined as "any natural person obligated or allegedly obligated to pay any debt."  § 1692a(3).  The definition of consumer includes not only actual debtors, but also people who are merely alleged to owe a debt, including by mistake.  Dunham, 663 F.3d at 1002.  In Dunham v. Portfolio Recovery Associates, LLC, the Eighth Circuit concluded that a person incorrectly dunned by a debt collector was a

"consumer" within the meaning of the FDCPA without reaching the issue of whether the payment obligation was a "debt." Dunham, 663 F.3d at 1001-04 & n. 4. The conclusion that persons mistakenly alleged to owe debts are "consumers" under the FDCPA is grounded in the statute's purpose and legislative history. See S. Rep. No. 95-382, at 4 (1977) (indicating that one purpose of the statute is to "eliminate the recurring problem of debt collectors dunning the wrong person").

Debt is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." § 1692a(5). Cases where debt collectors seek to recover a debt from the wrong person present unique problems to characterizing the alleged debt, as plaintiffs often have little information as to how or why the debt was incurred. Compare Davis v. Midland Funding, LLC, 41 F. Supp. 3d 919 (E.D. Cal. 2015) (denying summary judgment to a debt collector who argued that the consumer, who had erroneously been made subject to collection efforts because he had the same name as the actual debtor, had not established the alleged obligation was a "debt" within the meaning of the FDCPA, reasoning that "[i]t would be absurd to hold that a plaintiff who is subject to debt collection efforts for an obligation that he does not owe is ineligible for the FDCPA's protections simply because he cannot characterize the nature of that obligation"), with Evenson v. Palisades Collection LLC, No. 2:13-CV-1226, 2015 WL 3466936, at *1 (S.D. Ohio June 1, 2015) (requiring the plaintiff, against whom defendant attempted to collect a debt which the plaintiff asserted was the result of identity theft, to establish the consumer character of a debt owed by a person she did not know), and Anderson v. AFNI, Inc., Civil Action No. 10-4064, 2011 WL 1808779, at *13 (E.D. Pa. May 11, 2011) (same).

The FDCPA defines debt collector as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of

any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." § 1692a(6). Although the FDCPA is silent on the issue of vicarious liability for debt collectors, courts have held debt collectors vicariously liable for the actions of persons who collects debts on their behalf. See Fox v. Citicorp Credit Servs., Inc., 15 F.3d 1507, 1516 (9th Cir. 1994) (concluding a debt collector may be held vicariously liable for the actions of its attorney); see also Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 404 (3d Cir. 2000) (citing Fox, 15 F.3d at 1516, and reasoning "an entity which itself meets the definition of 'debt collector' may be held vicariously liable for unlawful collection activities carried out by another on its behalf"); Okyere v. Palisades Collection, LLC, 961 F. Supp. 2d 508, 516 (S.D.N.Y. 2013) (collecting cases noting vicarious liability may attach in the context of an attorney-client relationship where both the attorney and client are "debt collectors" under the FDCPA); Sonmore v. CheckRite Recovery Servs., Inc., No. 99CIV2039DDAFLN, 2000 WL 34494811, at *8 (D. Minn. Oct. 25, 2000) ("A collection agency that hires an attorney who violates the FDCPA may be vicariously liable for the attorney's improper actions."); Kimber v. Fed. Fin. Corp., 668 F. Supp. 1480, 1486 (M.D. Ala. 1987) (noting that "[t]o interpret § 1692a(6) [such that a debt collector is not liable for the actions of its attorney acting on its behalf] would severely undermine the Act and frustrate the intent of Congress, for a debt collector could simply evade the Act by hiring an attorney to do what it could not do itself."). But see Clark, 460 F.3d at 1173 ("Under general principles of agency – which form the basis of vicarious liability under the FDCPA – to be liable for the actions of another, the 'principal' must exercise control over the conduct or activities of the 'agent.'" (citation omitted)); Bodur v. Palisades Collection LLC, 829 F. Supp. 2d 246 (S.D.N.Y. 2011) (finding a debt collector is not liable for the actions of another unless it exercises control over the other's conduct). While Portfolio cites Clark v. Capital Credit & Collection Servs., Inc. for the proposition that a debt collector should not be liable for the actions of its attorney, the facts of Clark are distinguishable from this case. In Clark, the

issue was whether an attorney could be held liable for the actions of its debt collector client. This case presents the reverse issue: whether a debt collector is liable for the actions of an attorney the debt collector retained for the specific purpose of collecting a debt. As the cases discussed above illustrate, a debt collector can be liable for the actions of its attorney. The Court is persuaded that under the circumstances of this case Portfolio can be held liable for Abbott's actions.

Portfolio argues it is entitled to summary judgment for all of Plaintiff's FDCPA claims because Plaintiff has not established that the debt at issue is a consumer debt. To defeat summary judgment, however, Plaintiff is not required to establish any element of her claims by a preponderance of evidence. Rather, Plaintiff is required only to demonstrate a genuine issue for trial as to each essential element of her claims. See Smith v. City of Des Moines, Iowa, 99 F.3d 1466, 1471 (8th Cir. 1996). Therefore, Plaintiff need only raise a genuine issue of whether the debt is a consumer debt. Plaintiff supports her contention that the debt is a consumer debt by pointing to the financing agreement pertaining to the loan, titled "Vehicle Retail Installment Contract," which lists Denise A. and Mike A. Scott as signatories and indicates that the loan is for the purchase of a used 1994 Ford Tempo. Plaintiff also presents the credit application relating to the loan, which indicates that Denise A. and Mike A. Scott are disabled and reports no business income. Finally, Plaintiff presents the case status report of the Johnson County Sheriff in Portfolio's debt collection proceedings against the Debtor, Portfolio Recovery Assoc., LLC, EIN #54-1794735 v. Mike A. Scott and Denise A. Scott (Portfolio v. Mike A. and Denise A. Scott), Case No. LACV 070826, which denominates the action type as "CONSUMER CREDIT/ NOG." Denise S. Scott Decl., Ex. 2 at 8, Pl.'s Mot. Summ. J., ECF No. 8-2. Drawing reasonable inferences for Plaintiff, the Court concludes that together these facts present a genuine issue as to the consumer nature of the loan.

### a. Section 1692c(b): Communications with Third Parties

Section 1692c(b) of the FDCPA generally prohibits a debt collector from communicating "with any third parties in connection with collecting a debt except as reasonably necessary to effectuate a postjudgment judicial remedy." § 1692c(b). The prohibition on third-party communications extends to communications "inherent in an ordinary lawsuit." Heintz, 514 U.S. at 296. Plaintiff argues that Portfolio violated § 1692c(b) when Portfolio contacted Wal-Mart to garnish her wages. Portfolio does not deny communicating with Wal-Mart but argues that even if the debt is a consumer debt, Plaintiff is nonetheless outside the protections of § 1692c(b) because the FDCPA protects the rights of consumers rather than the rights of third parties. Because Plaintiff did not actually owe a debt, Portfolio argues, Plaintiff is a third party lacking standing under § 1692c(b).

Plaintiff has adduced sufficient evidence to raise a genuine issue of material fact as to whether Portfolio alleged Plaintiff owed a debt. On this record, a reasonable jury could conclude that Portfolio alleged Plaintiff owed a debt when Portfolio garnished Plaintiff's wages at Wal-Mart while purporting to enforce a judgment against her. A reasonable jury could find that, in so doing, Portfolio alleged *to Wal-Mart* that Plaintiff owed a debt and that Portfolio thereby violated § 1692c(b).

Portfolio argues that even if Plaintiff has standing under § 1692c(b), no reasonable jury could conclude that Portfolio's communications to Wal-Mart were not excluded from § 1692c(b), which permits third-party communications that are "reasonably necessary to effectuate a post-judgment judicial remedy." § 1692c(b). The Court finds this argument unpersuasive because Portfolio has not established a lack of genuine dispute as to whether Portfolio was effectuating a postjudgment judicial remedy against Plaintiff, rather than attempting to effectuate a default judgment against a different person with a similar name. A reasonable jury could conclude that garnishing the wages of the wrong person is not "reasonably necessary" to effectuate a judgment; indeed, a reasonable jury could conclude that only actions against the correct person would be

necessary.  For these reasons, the Court cannot grant Portfolio's motion for summary judgment as to Plaintiff's § 1692c(b) claim.

### b.  Section 1692e: False, Deceptive, or Misleading Representations or Means

Section 1692e of the FDCPA establishes that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." In evaluating whether a representation or means is false, deceptive, or misleading, the representation or means must be viewed "through the eyes of the unsophisticated consumer."  See Duffy, 215 F.3d at 872.  "These tests are designed to protect consumers of below average sophistication or intelligence, but they also contain an objective element of reasonableness that prevents liability for bizarre or idiosyncratic interpretations of collection notices."  Peters v. Gen. Serv. Bureau, Inc., 277 F.3d 1051, 1055 (8th Cir. 2002) (internal citations and quotation marks omitted).

Like other sections of the FDCPA, § 1692e provides a list of examples of prohibited conduct falling within the section's ambit.  These lists, however, are not exhaustive.  § 1692e. Specifically prohibited by § 1692e are "[t]he false representation of the character, amount, or legal status of any debt," § 1692e(2)(A), and "[t]he threat to take any action that cannot legally be taken," § 1692e(5).  Although § 1692e generally applies to false, deceptive, or misleading representations or means directed at the consumer, see Volden v. Innovative Fin. Sys., Inc., 440 F.3d 947, 954 (8th Cir. 2006), communications made to third parties can also be actionable, see Hemmingsen v. Messerli & Kramer, P.A., 674 F.3d 814 (8th Cir. 2012) ("We are unwilling to adopt the district court's broad ruling that false statements not made directly to a consumer debtor are never actionable under § 1692e.  No other court has read the statute that narrowly."); see also O'Rourke v. Palisades Acquisition XVI, LLC, 635 F.3d 938, 943 (7th Cir. 2011) ("[T]he Act is limited to protecting consumers and those who have a special relationship with the consumer – such that the Act is still protecting the consumer – from statements that would mislead

these consumers."); <u>Wright v. Fin. Serv. of Norwalk, Inc.</u>, 22 F.3d 647, 650 (6th Cir. 1994) (finding § 1692e applicable to communications to the executrix of a debtor's estate). "While liability under § 1692e is not confined to statements by collectors to consumers, the challenged statement must have the potential to 'misl[ea]d, deceive[], or otherwise dupe[]' someone in order to be actionable." <u>McIvor v. Credit Control Servs., Inc.</u>, 773 F.3d 909, 913 (8th Cir. 2014) (alterations in original) (quoting <u>Hemmingsen</u>, 674 F.3d at 818-19) (finding § 1692e inapplicable to a communication made to a credit reporting agency because the communication could not have misled, deceived, or duped the agency). Courts have determined that the protections of § 1692e extend to communications made to the consumer's employer. <u>See, e.g.</u>, <u>Terry v. C & D Complete Bus. Sols.</u>, No. 09-00799-CV-W-DGK, 2011 WL 144920, at *7 (W.D. Mo. Jan. 18, 2011).

Plaintiff argues that Portfolio violated § 1692e(2)(A) when it made false, deceptive, and misleading representations to Wal-Mart and the Johnson County Sheriff as to the character, amount, and legal status of a debt owed by Plaintiff, because Plaintiff did not owe any debt to Portfolio. Portfolio does not argue that its representations to Wal-Mart were not false, deceptive, or misleading, but argues instead that § 1692e does not apply to third-party representations. As discussed above, the Eighth Circuit has concluded that § 1692e is not limited to communications made to the consumer. <u>See</u> <u>McIvor</u>, 773 F.3d at 913. The Court concludes that applying §1692e to communications made to an employer furthers the FDCPA's purpose of protecting consumers because, as here, employer-garnishees are gatekeepers to involuntary payments made in satis-faction of an employee's purported debts. Due to the nature of the employment relationship, a misleading statement made to an employer in connection with a garnishment has the capacity to mislead and harm a consumer in ways the FDCPA was intended to prohibit. Plaintiff has come forth with evidence that raises a genuine issue of material fact as to whether Portfolio misrepresented to Wal-Mart a debt Plaintiff allegedly owed, including evidence of a phone call made by Abbott to Wal-Mart and evidence of garnishment interrogatories sent to Wal-Mart

relating to Plaintiff.  Given that Plaintiff never owed any debt to Portfolio but Portfolio none-

theless represented that Plaintiff did owe such a debt, the Court finds there is a genuine issue of

material fact as to whether Portfolio's communications had the potential to mislead, deceive, or

otherwise dupe Wal-Mart.  See id.  The same reasoning applies to Portfolio's communications

with the Johnson County Sheriff, whose understanding (or misunderstanding) of the validity of

Plaintiff's debt was equally necessary for the garnishment of Plaintiff's wages.  Therefore,

applying § 1692e to communications made to the Johnson County Sheriff also furthers the

FDCPA's purpose of protecting consumers.  Portfolio's motion as to Plaintiff's FDCPA

§ 1692e(2)(A) claim must therefore be denied.

### c.  Section 1692e(5): Threat to Take any Action that Cannot Legally be Taken

Plaintiff argues that Portfolio violated § 1692e(5), which prohibits debt collectors from

using "any false, deceptive, or misleading representation or means in connection with the collec-

tion of any debt," including "[t]he threat to take any action that cannot legally be taken or that is

not intended to be taken."  Courts disagree on whether § 1692e(5) protects consumers against

debt collectors who *actually take* illegal action against them, in addition to debt collectors that

only threaten to do so.  While the Eighth Circuit has not spoken on this issue, the majority view

holds that § 1692e(5) applies to completed acts in addition to mere threats.  These courts have

noted the "futility of a statutory scheme that would provide more protection to debt collectors

who violate the law than to those who merely threaten or pretend to do so."  Sprinkle v. SB & C

Ltd., 472 F. Supp. 2d 1235, 1247 (W.D. Wash. 2006).  These courts reason that "[i]t simply

strains credulity to believe that the FDCPA, a law that safeguards consumers from abusive and

deceptive debt collection practices by debt collectors, would prohibit threats of illegal action but

not the illegal actions themselves . . . .  To find otherwise would undermine the consumer protec-

tion goals of the FDCPA."  Bradshaw v. Hilco Receivables, LLC, 765 F. Supp. 2d 719, 730 (D.

Md. 2011) (internal citations omitted); see also Poirier v. Alco Collections, Inc., 107 F.3d 347,

350-51 (5th Cir. 1997); Collins v. Erin Capital Mgmt., LLC, 991 F. Supp. 2d 1195, 1211-12 (S.D. Fla. 2013); Harrington v. CACV of Colorado, LLC, 508 F. Supp. 2d 128, 136 (D. Mass. 2007); Foster v. D.B.S. Collection Agency, 463 F. Supp. 2d 783, 803 (S.D. Ohio 2006); Marchant v. U.S. Collections W., Inc., 12 F. Supp. 2d 1001, 1006 (D. Ariz. 1998).  Conversely, courts that determine § 1692e(5) to be inapplicable to actions taken by debt collectors rely on the plain meaning of § 1692e(5)'s statutory language, which is facially limited to threats.  See Cox v. Hilco Receivables, LLC, 726 F. Supp. 2d 659, 666 (N.D. Tx. 2010) ("Section 1692e(5) applies only to threatened action, not to actions already undertaken."); Delawder v. Platinum Fin. Servs. Corp., 443 F. Supp. 2d 942, 948 (S.D. Ohio 2005) (dismissing a § 1692e(5) claim because defendants "did not threaten to take action, but actually took it").  Courts in the minority have noted that "[e]lsewhere in the FDCPA, Congress was explicit when it intended to prohibit both threats to act and actually acting," and conclude that "the language of § 1692e(5) did not result from a simple drafting error."  Dial v. Midland Funding, LLC, 2:14-cv-00663-WMA, 2015 WL 751690, at *1 (N.D. Ala. Feb. 23, 2015).

Plaintiff argues that Portfolio violated § 1692e(5) by garnishing Plaintiff's wages at Wal-Mart, an action that Plaintiff argues could not legally be taken.  Plaintiff has not presented any evidence suggesting that Portfolio ever threatened Plaintiff in connection with the garnishment.  Indeed, the record indicates Plaintiff had no warning at all.  Yet the Court is not persuaded that Portfolio's conduct is therefore outside the scope of § 1692e.  For one, the examples set forth in § 1692e are not intended to "limit[] the general application" of prohibiting "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  Moreover, the FDCPA was intended to be applied in a liberal manner.  See McGowan v. King Inc., 569 F.2d 845, 848 (5th Cir. 1978).  The Court is persuaded by the reasoning of the majority of courts that find § 1692e applies not only to threatened actions but also to actions actually taken.  For all of the foregoing reasons, the Court must deny Portfolio's motion as to Plaintiff's § 1692e(5) claim.

### d.  Section 1692f: Unfair or Unconscionable Means to Collect a Debt

"A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  § 1692f.  Among the unfair and unconscionable means specifically enumerated by § 1692f is "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  § 1692f(1).  "Congress enacted Section 1692f to catch conduct not otherwise covered by the FDCPA."  Baker v. Allstate Fin. Servs., Inc., 554 F. Supp. 2d 945, 953 (D. Minn. 2008) (citing S. Rep. No. 95-382, at 4 (1977) ("[T]his bill prohibits in general terms any harassing, unfair, or deceptive collection practice.  This will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed.")).  "[C]onduct that may be deemed 'unfair or unconscionable' is not limited to the acts enumerated in subsections (1) through (8)."  Bryant v. Bonded Account Serv./Check Recovery, Inc., 208 F.R.D. 251, 258 (D. Minn. 2000).

Plaintiff argues that Portfolio violated § 1692f(1) by garnishing Plaintiff's wages at Wal-Mart, since the collection of any amount of wages from Plaintiff was not "authorized by the agreement creating the debt or permitted by law."  § 1692f(1).  To determine whether Portfolio's garnishment was permitted by law, the Court looks to Iowa's garnishment law.  The Iowa Supreme Court's definition of garnishment states as follows:

> [Garnishment] is a proceeding whereby a plaintiff-creditor (garnishor) seeks to subject to his or her claim the property or money of a third party (garnishee) owed by such party to defendant-debtor (principal defendant).  The demand upon the garnishee must be such that the principal defendant could have maintained an action in his or her own right against the garnishee for it.

Van Maanen v. Van Maanen, 360 N.W.2d 758, 761 (Iowa 1985) (internal citations omitted).  The Iowa garnishment statute lists the persons who may be garnished: "[a] sheriff may be garnished for money of the defendant in the sheriff's hands; a judgment debtor of the defendant, when the judgment has not been assigned on the record . . . ."  Iowa Code § 642.1.  Plaintiff has presented evidence that Portfolio had no judgment against her but nonetheless garnished her

wages.  Although Plaintiff has not made a wrongful garnishment claim against Portfolio, for purposes of the present § 1692f analysis, the Court concludes Plaintiff has presented sufficient evidence to raise a genuine issue of material fact as to whether Portfolio violated § 1692f when it garnished Plaintiff's wages without a judgment against her.

Portfolio argues that § 1692f is not applicable to Portfolio's garnishment for two reasons – because Plaintiff has not alleged that Abbott failed to comply with the state court garnishment process, and because Abbott took immediate action when he was notified Portfolio garnished the wrong Denise Scott.  These arguments are sophistical.  Although Abbott, working on Portfolio's behalf, attests to the garnishment procedures he followed, the record indicates Abbott overlooked a critical element – the identity of the actual defendant against whom he had obtained a default judgment.  Executing a garnishment against a person other than the defendant-debtor obviously fails to comply with proper garnishment procedures.  See Iowa Code § 642.1.  Portfolio's latter argument that Abbott's "immediate action" after realizing he had the wrong person is sufficient to remedy a violation of § 1692f is similarly unpersuasive, especially in light of the fact that Abbott condemned the funds to the wrong person.

Portfolio also argues that Plaintiff's § 1692f claim fails because Plaintiff has not established she was deceived by the garnishment of her wages and in support of its argument cites to Covell v. Chiari & Ilecki, LLP, No. 12CV660A, 2012 WL 7177830, at *4 (W.D.N.Y. Oct. 16, 2012), R & R adopted, No. 12CV660, 2013 WL 655517, at *1 (W.D.N.Y. Feb. 21, 2013).  However, § 1692f is not concerned with deceptive representations, but with unfair practices.  Compare § 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."), with § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.").  Covell is distinguishable from this case because in analyzing the deceptive nature of a debt collector's representation, the Covell court was interpreting § 1692e, which concerns misleading representations, and not § 1692f, which concerns unfair conduct.  Lastly, Portfolio argues that Plaintiff's § 1692f claim fails as a

matter of law because the alleged misconduct underlying Plaintiff's § 1692f claim is no different than the misconduct underlying Plaintiff's § 1692c(b) and § 1692e claims.  In the context of this case, the Court must agree.  Plaintiff alleges that Portfolio violated § 1692f by garnishing Plaintiff's wages without the legal right to do so.  As Plaintiff has claimed, and as the Court has already determined, garnishing a consumer's wages without authorization conduct falls under § 1692e(5).  Yet for that very reason, Plaintiff cannot simultaneously maintain a claim under § 1692f for the same conduct.  See Baker, 554 F. Supp. 2d at 953 ("Congress enacted Section 1692f to catch conduct not otherwise covered by the FDCPA.").  Therefore, the Court must grant Portfolio's motion as to Plaintiff's § 1692f claim.

### e.  FDCPA Bona Fide Error Defense

"A debt collector may not be held liable in any action brought under [the FDCPA] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  § 1692k(c).  "The bona fide error defense exists as an exception to the strict liability imposed upon debt collectors by the FDCPA."  Picht, 236 F.3d at 451. The Eighth Circuit has acknowledged that while the § 1692k(c) defense is a fact-intensive inquiry, "it may be resolved by summary judgment when a reasonable jury could only conclude (1) the violation was unintentional, (2) the violation was a bona fide error, and (3) that reasonable precautions to avoid bona fide errors were in place."  West v. Abendroth & Russell Law Firm, 45 F. Supp. 3d 959, 967 (N.D. Iowa 2014) (citing Wilhelm v. Credico, 519 F.3d 416, 420-421 (8th Cir. 2008)).  The debt collector bears the burden of proving each element of the defense. Eide v. Colltech, Inc., 987 F. Supp. 2d 951, 964-65 (D. Minn. 2013) (quoting Owen v. I.C. Sys., Inc., 629 F.3d 1263, 1271 (11th Cir. 2011)).

The Eighth Circuit has not fully elaborated the precise requirements of each element of the bona fide error defense, so district courts have looked to other circuits for guidance.  See West, 45 F. Supp. 3d at 967.  To establish the first element of the bona fide error defense, "the debt

18

collector must only show that the violation was unintentional, not that the communication itself was unintentional." Id. (quoting Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 402 (6th Cir. 1998)). The second element requires that a bona fide error is "an error made in good faith or that is a genuine mistake." Id. (citing Kort v. Diversified Collection Servs., Inc., 394 F.3d 530, 538 (7th Cir. 2005)). Finally, "[t]he third element requires only that reasonable precautions are taken, not that every conceivable precaution to avoid the bona fide error is taken." Id. (citing Kort, 394 F.3d at 539).

Portfolio contends that because Portfolio was unaware of Abbott's efforts to obtain "Denise Scott's" Social Security number, the error must therefore be unintentional. This argument is unpersuasive because as the Court has noted, a debt collector is vicariously liable for the actions of its attorney. Importantly, the record is unclear as to what data Abbott used to gather Plaintiff's Social Security number and employment information. Without this information, it is not possible to conclude there is no dispute as to Abbott's intent when he sought out Plaintiff and garnished her wages. Hence, on this record, the Court is unable to conclude that no genuine dispute of material fact exists as to Portfolio's intent. Furthermore, the record suggests Portfolio may have had incentives to garnish Plaintiff's wages rather than the Debtor's. For instance, the record indicates Plaintiff was employed at the time of garnishment, while the Debtor and her husband were disabled, unemployed, and likely judgment-proof. The record also indicates that Abbott had reason to believe the Debtor was not employed at Wal-Mart, but nonetheless pursued the garnishment of wages of a Denise Scott who was employed at Wal-Mart. Lastly, the record indicates that Portfolio, if not Abbott himself, had the Debtor's actual Social Security number prior to filing the state court collection action against the Debtor and that Abbott therefore could have detected his mistakes before proceeding with the garnishment against Plaintiff. For these reasons, Portfolio has not established this element of the bona fide error defense.

While a genuine dispute of material fact as to one element of the bona fide error defense is a sufficient basis upon which to deny Portfolio's motion as to the defense, the Court finds Portfolio has likewise failed to establish the second element, whether the error was "made in

good faith or [was] a genuine mistake." See West, 45 F. Supp. 3d at 967.  As noted, the record

provides grounds for a reasonable jury to conclude Abbott's and Portfolio's actions were not a

genuine mistake given the possibility that either or both of them intended to garnish Plaintiff's

wages rather than the Debtor's.  Moreover, because the record does not clarify which "Denise

Scott's" information was used or sought by Abbott, a genuine dispute of fact remains as to

whether Abbott sought the Debtor's information rather than Plaintiff's from the outset.  Further-

more, Abbott's apparent haphazard attempt to condemn Plaintiff's wages back to her, instead

condemning them to the Debtor, provides grounds for a reasonable jury to conclude Abbott's

error was not in good faith or a genuine mistake but rather was the result of carelessness or

indifference.  The record also presents a genuine dispute as to whether Portfolio and Abbott

knew or had reason to know the Debtor's actual name, date of birth, and address, and had

obtained the same information for Plaintiff.  Together, these factual issues demonstrate that

Portfolio has not established the second element of the bona fide error defense.

   Finally, as to whether reasonable precautions were taken to avoid garnishing Plaintiff's

wages, Portfolio contends that it satisfies this factor by virtue of having hired Abbott, an attorney

licensed to practice law in Iowa, to conduct the collection, and that no evidence suggests this

precaution was unreasonable.  However, the Court cannot conclude that merely hiring a licensed

attorney is sufficient evidence of having taken reasonable precautions, because such a conclusion

is entirely incompatible with debt collectors' vicariously liability for the actions of their attor-

neys.  Were the Court to agree with Portfolio, the Court would reach the absurd conclusion that

even though a debt collector is vicariously liable for the acts of its attorney, it may nonetheless

avoid liability by delegating its debt collections to its attorney.  Yet even if the Court were

inclined to accept Portfolio's argument, the record would still preclude summary judgment on

this element of the defense.  For example, even though Portfolio hired Abbott to handle the Ford

Motor Credit account in April 2009, the record shows that in May 2009 Portfolio received more

information regarding the Debtor, including her Social Security number, and the parties dispute

whether or when Portfolio transferred or should have transferred this information to Abbott.  For

Portfolio to rely on its appointment of Abbott as a reasonable precaution to avoid bona fide errors, it would also need to demonstrate that it gave Abbott the information necessary for him to perform his job properly.

Portfolio also argues that Abbott should be entitled to the bona fide error defense in his own capacity because, according to Portfolio, Abbott reasonably relied on Accurint and The WorkNumber when searching for the Debtor's personal information, properly followed Iowa garnishment procedure when garnishing Plaintiff's wages, and promptly issued a Release of Garnishment upon learning he had the wrong Denise Scott.  Plaintiff counters that reliance on Accurint, without more, would be an insufficient precaution given Accurint's disclaimer to its users, which states:

> Due to the nature of the origin of public record information, the public records and commercially available data sources used in reports may contain errors.  Source data is sometimes reported or entered inaccurately, processed poorly or incorrectly, and is generally not free from defect.  This product or service aggregates and reports data, as provided by the public records and commercially available data sources, and is not the source of the data, nor is it a comprehensive compilation of the data.  Before relying on any data, it should be independently verified.

Pl's App. in Resist. to Def.'s Mot. 45, ECF No. 24-2.  Because Accurint warns users not to rely on it without independent verification, and because there is no evidence Abbott conducted independent verification – Abbott admittedly relied solely on the accuracy of Accurint – Abbott has not established this element of the bona fide error defense.  For these reasons, the Court finds Portfolio has failed to demonstrate on this record that it is entitled to summary judgment on the defense.

### 2.  IDCPA Claims

"The Iowa Debt Collection Practices Act ('IDCPA') was modeled after the Model Consumer Credit Act as a 'significant attempt to remedy debt collection abuses.'"  Hogue v. Palisades Collection, LLC, 494 F. Supp. 2d 1043, 1051 (S.D. Iowa 2007) (quoting William A. Reilly II, Debt Collection Practices: Iowa Remedies for Abuse of Debtors' Rights, 68 Iowa L.

Rev. 753, 772 (1983)).  There is a dearth of case law interpreting the IDCPA, but "Iowa courts may look to federal debt collection law to determine whether conduct is unconscionable under Iowa debt collection law."  Parker v. Wetsch & Abbott, PLC., No. CIV. 4:04-CV-40502-CFB, 2006 WL 4846042, at *5 (S.D. Iowa July 11, 2006) (citing Pub. Fin. Co. v. Van Blairicome, 324 N.W.2d 716, 724-25 (Iowa 1982) (interpreting Iowa Code 537.7103(3)(a) in light of the legislative history of the FDCPA § 1692c(b))).  Like the FDCPA, the IDCPA applies to consumer credit transactions.  See Midwest Recovery Servs. v. Wolfe, 463 N.W.2d 73, 76 (Iowa 1990).  The IDCPA provides that "debt" means "an actual or alleged obligation arising out of a consumer credit transaction."  Iowa Code § 537.7102(3).  "Debtor" is defined as "the person obligated."  Iowa Code § 537.7102(2).

IDCPA § 537.7103(1) provides that "[a] debt collector shall not collect or attempt to collect a debt by means of an illegal threat, coercion or attempt to coerce," and sets forth six types of conduct that constitute "an illegal threat, coercion or attempt to coerce within the meaning of this subsection."  Plaintiff alleges that among these, Portfolio violated § 537.7103(1)(c), (e), and (f), which prohibit, respectively, "[f]alse accusations made to a person, including a credit reporting agency, or the threat to falsely accuse, that a debtor is willfully refusing to pay a just debt"; "[t]he false threat that nonpayment of a debt may result in the arrest of a person or the seizure, garnishment, attachment or sale of property or wages of that person"; and "[a]n action or threat to take an action prohibited by this chapter or any other law."

Portfolio challenges the sufficiency of Plaintiff's claims under the IDCPA by arguing Plaintiff has failed to establish the underlying debt was a consumer debt.  As the Court has concluded already, Plaintiff has raised a genuine issue of material fact as to the consumer nature of the debt, and the same issue persists for Plaintiff's IDCPA claims.

Portfolio argues that § 537.7103(1) is not applicable to this case because Plaintiff has not produced evidence showing Portfolio made any illegal threat, coercion, or attempt to coerce Plaintiff or anyone else in attempting to collect a debt from Plaintiff.  The Court agrees that the

record does not indicate any threats or attempts to coerce made by Portfolio in attempting to collect from Plaintiff.  Moreover, there is no evidence indicating Portfolio falsely accused, or threatened to falsely accuse, Plaintiff of willfully refusing to pay a just debt.  Portfolio's motion as to Plaintiff's § 537.7103(1)(c) claim must therefore be granted.  However, the fact that Portfolio did not use threats does not provide a basis for summary judgment on Plaintiff's other claims under § 537.7103(1).  Similar to FDCPA § 1692e, IDCPA § 537.7103(1)(e) prohibits false threats of garnishment and other acts.  As the Court has already concluded, FDCPA § 1692e(5) applies to actions actually taken by debt collectors in addition to mere threats.  Interpreting IDCPA § 537.7103(1)(e) in light of its federal corollary, the Court concludes that unauthorized garnishment, in addition to false threats of garnishment, is properly included in the meaning of § 537.7103(1)(e).  The Court need not extend this reasoning to § 537.7103(1)(f), which expressly prohibits debt collectors from taking actions prohibited by law.  As garnishing a consumer's wages without authorization cannot be said to comply with the law, the Court concludes such conduct falls within the plain meaning of § 537.7103(1)(f).  For these reasons, the Court must deny Portfolio's motion as to Plaintiff's claims under § 537.7103(1)(e) and (f).

Plaintiff next argues that Portfolio violated IDCPA § 537.7103(2), which prohibits "oppress[ion], harass[ment] or abuse [of] a person in connection with the collection or attempted collection of a debt of that person or another person."  There is no evidence in this record that Portfolio harassed or abused anyone in attempting to collect from Plaintiff.  The record shows only that Portfolio communicated with Wal-Mart in executing a wage garnishment regarding Plaintiff.  Therefore, Portfolio's motion as to Plaintiff's IDCPA § 537.7103(2) claim must be granted.

Plaintiff next argues that Portfolio violated IDCPA § 537.7103(3)(a), which, similar to FDCPA § 1692c(b), prohibits "[t]he communication . . . [of] the fact of a debt to a person other than the debtor . . . ."  Portfolio argues this section is inapplicable because the debt at issue was not Plaintiff's debt, and because Portfolio did not communicate with Plaintiff.  These arguments

are not persuasive because "debt" is defined to include not only actual but also alleged obligations, and because, like FDCPA § 1692c(b), IDCPA § 537.7103(3)(a) aims at communications made to third parties.  Therefore, the Court must deny Portfolio's motion as to Plaintiff's claim under IDCPA § 537.7103(3)(a) for the same reasons it has denied Portfolio's motion as to Plaintiff's claim under FDCPA § 1692c(b).

Plaintiff also argues Portfolio violated IDCPA § 537.7103(4)(e), which prohibits "intentional misrepresentation, or a representation which tends to create a false impression of the character, extent or amount of a debt, or of its status in a legal proceeding."  This section is analogous to the prohibition in FDCPA § 1692e against "[t]he false representation of the character, amount, or legal status of any debt."  Portfolio argues that this section is inapplicable because Plaintiff has not alleged Abbott acted intentionally.  Yet § 537.7103(4)(e) explicitly contemplates unintentional misrepresentations, forbidding intentional misrepresentations *and* representations tending to create a false impression of the debt.  As with Plaintiff's claim under FDCPA § 1692e(2)(A), Plaintiff has raised a genuine issue of material fact as to whether Portfolio and/or Abbott misrepresented the character of an alleged debt owed by Plaintiff when it garnished Plaintiff's wages at Wal-Mart.  Therefore, Portfolio's motion as to this claim must be denied.

Finally, Plaintiff argues that Portfolio violated IDCPA § 537.7103(5)(d), which like FDCPA § 1692f(1) prohibits "collection of . . . interest or other charge, fee or expense . . . [unless] expressly authorized by the agreement creating the obligation and is legally chargeable to the debtor, or is otherwise legally chargeable."  Portfolio argues this section is inapplicable as pertaining only to "debtors," defined as "the person obligated."  However, because the definition of debt includes not only actual debts, but also alleged debts, the Court reads the definition of debtor to include persons who are allegedly obligated to pay a debt in addition to those actually obligated to pay.  Cf. Dunham, 663 F.3d at 1002 (determining in the FDCPA context

24

"consumer" includes persons allegedly owing debts); <u>Davis</u>, 41 F. Supp. 3d at 924 (same). Therefore, the Court cannot agree with Portfolio that the definition of "debtor" does not cover persons alleged to owe debts.  However, reading  IDCPA § 537.7103(5)(d) in light of its federal corollary, FDCPA § 1692f(1), the Court must grant Portfolio's motion as to Plaintiff's claim under IDCPA § 537.7103(5)(d) for the same reasons it must grant Portfolio's motion as to Plaintiff's claim under FDCPA § 1692f(1).

### D.  Plaintiff's Motion for Partial Summary Judgment

Where the court confronts cross-motions for summary judgment, the court views the record in the light most favorable to plaintiff when considering defendant's motion, and the court views the record in the light most favorable to defendant when considering plaintiff's motion. <u>Weber v. Travelers Home & Marine Ins. Co.</u>, 801 F. Supp. 2d 819, 825 (D. Minn. 2011).  "[T]he filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits."  <u>Sam's Riverside, Inc. v. Intercon Sols., Inc.</u>, 790 F. Supp. 2d 965, 975 (S.D. Iowa 2011) (quoting <u>Wermager v. Cormorant Twp. Bd.</u>, 716 F.2d 1211, 1214 (8th Cir. 1983)). "Cross motions simply require [the Court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed."  <u>Id.</u> (alteration in original) (quoting <u>Barnes v. Fleet Nat'l Bank</u>, 370 F.3d 164, 170 (1st Cir. 2004)).  On cross motions for summary judgment, a party concedes there are no factual issues and accepts the other party's allegations only for the purpose of their own motion.  <u>C. Line, Inc. v. City of Davenport</u>, 957 F. Supp. 2d 1012, 1024 (S.D. Iowa 2013).  "That both sides move for summary judgment does not mean that there are no genuine issues, obliging a court to grant judgment for one side or the other."  <u>Hot Stuff Foods, LLC v. Houston Cas. Co.</u>, 771 F.3d 1071, 1076 (8th Cir. 2014) (quoting <u>St. Paul Fire & Marine Ins. Co. v. Engelmann</u>, 639 N.W.2d 192, 199 (S.D. 2002)).  "Summary judgments

in favor of parties who have the burden of proof are rare, and rightly so." <u>Turner v. Ferguson</u>, 149 F.3d 821, 824 (8th Cir. 1998).

As the Court has already reasoned, the clarity of the record in this case leaves much to be desired. The evidence adduced by both parties is frequently ambiguous and inconclusive, and the ultimate admissibility at trial of evidence in the record is not immune from attack. Thus, while the Court concludes that Plaintiff has raised genuine issues as to each of the essential elements of her claims as well as to the availability to Portfolio of the bona fide error defense, Plaintiff has not demonstrated that no rational trier of fact could find for Portfolio. <u>See</u> <u>Fercello v. Cty. of Ramsey</u>, 612 F.3d 1069, 1077 (8th Cir. 2010) (reasoning summary judgment is appropriate where "reasonable fact finders could not find in favor of the nonmoving party"). The Court states no opinion as to whether Plaintiff would prevail at trial, and the Court concludes genuine issues of material fact preclude summary judgment.

## III.   CONCLUSION

For the reasons stated, Portfolio's Motion for Summary Judgment, ECF No. 7, must be **granted** under Rule 56 as to Plaintiff's claims under FDCPA § 1692f(1) and IDCPA §§ 537.7103(1)(c), 537.7103(2), and 537.7103(5)(d). Portfolio's motion must be **denied** as to all other claims. Plaintiff's Motion for Partial Summary Judgment, ECF No. 8, must also be **denied**.

**IT IS SO ORDERED**.

Dated this 16th day of October, 2015.

JAMES E. GRITZNER, Senior Judge
U.S. DISTRICT COURT